UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-61-R

WISDOM FISHING CAMP COMPANY
d/b/a WISDOM DOCK,                                          THIRD PARTY PLAINTIFF /
DEFENDANT

v.

STEVE BROWN,                                                THIRD PARTY DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Third Party Defendant Steve Brown's ("Brown") Motion for Summary Judgment (Docket #55). The Third Party Plaintiff, Wisdom Dock Fishing Camp Company ("Wisdom Dock") has responded to Brown's motion (Docket #59), and Brown has replied to that response (Docket #61). This matter is now ripe for adjudication. For the following reasons, the Third Party Defendant's Motion for Summary Judgment is **GRANTED**.

**PROCEDURAL BACKGROUND**

The Plaintiff in this matter, Ms. Lisa Brown ("Ms. Brown"),[1] was injured on the evening of July 13, 2004, when a mooring line used to tie a seventy-two (72) foot houseboat to the shore on Dale Hollow Lake snapped during a severe thunderstorm, striking Ms. Brown on her thigh. The Plaintiff brought suit against Wisdom Dock, alleging that the Third Party Plaintiff/Defendant negligently supplied the mooring ropes used to the tie the boat and that the lines were worn and in poor condition. After some discovery had taken place, Wisdom Dock brought a third party complaint against Steve Brown for claims of contractual and common law indemnity, arguing that he was responsible for the Plaintiff's injuries. After the completion of

---

[1] No relation to the Third Party Defendant, Steve Brown.

discovery, the Plaintiff and Wisdom Dock agreed to a settlement, with Wisdom Dock paying Ms. Brown $390,000 in exchange for a full and final release of claims against it. Wisdom Dock's claims against Steve Brown were not included in the settlement, and the Third Party Plaintiff/Defendant sought to pursue its indemnity claims against the Third Party Defendant after the settlement with Ms. Brown was reached.

## FACTUAL BACKGROUND

Wisdom Dock operates a lakeside resort in Albany, Kentucky, which includes the owning and operating of up to twenty (20) houseboats. Paul Boggs ("Boggs"), the President and co-owner of Wisdom Dock, used a one-half (1/2) inch nylon rope to secure the seventy-two (72) foot houseboats; the same houseboat leased by Brown in this matter. After equipping each houseboat with a mooring rope, Wisdom Dock workers were responsible for inspecting and maintaining the ropes after each houseboat usage. Experts for Brown have stated that the rope was not sufficient to secure the houseboat in this matter because Wisdom Dock should have used at least a one (1) inch thick nylon rope rather than a half-inch; however, experts for Wisdom Dock have stated that the rope was sufficient to secure the houseboat. Brown also argues that the rope used on the houseboat he rented was old and worn; however, Wisdom Dock argues that on the evening of the accident Brown tied the rope at the wrong angle to the shore and improperly permitted a JetSki to be tied to the mooring line, and that these two (2) events caused the mooring line to snap.

On July 12, 2004, Brown and his friends arrived at Wisdom Dock to lease a houseboat. Brown signed the rental agreement and paid the balance of the rental fee. The following day, July 13, 2004, the party took the houseboat to the cove on Dale Hollow Lake, where Brown

secured the houseboat by tying it to three (3) trees on the shore.  Later that evening, as the party returned to the houseboat after a sunset cruise, a storm came to the area, bringing rain and heavy wind.  Steve Brown went to the top of the houseboat to secure the furniture, while Ms. Brown went to check the personal water crafts (JetSki), which Steve Brown claims were attached to the side of the houseboat, not the mooring line.  While Mrs. Brown was checking on the personal water craft, the stern docking rope snapped, recoiled back towards the boat and struck Mrs. Brown on her leg, just above the knee, causing injuries to her thigh that required treatment and therapy.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co*., 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence.  To support this position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52

(1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Third Party Defendant contends that as a matter of law Wisdom Dock is not entitled to indemnity from Steve Brown under theories contractual indemnity and common law indemnity. Brown argues that the rental agreement does not state that Wisdom Dock is entitled to indemnification and that even if it does, the part of the rental agreement in question is an unenforceable exculpatory clause. Further, Brown asserts that Wisdom Dock is not entitled to indemnification because Wisdom Dock was primarily liable for Ms. Brown's injuries, and therefore, Wisdom Dock is not entitled to indemnification under Kentucky common law. Kentucky law distinguishes between contractual and common law indemnity claims. *Thompson v. The Budd Company*, 199 F.3d 799, 806 (6th Cir. 1999). As such, the Court shall address each of these arguments separately.

### 1. Contractual Indemnification

Under Kentucky law, parties to a contract may provide for contractual indemnification for costs incident to legal liability as well as legal liability itself. *Thompson* at 807-08 (citing *United States Fidelity & Guar. Co. v. Napier Elec. & Const. Co. Inc.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)).  However, under Kentucky law, if there is ever doubt as to the meaning of an indemnity clause or doubt as to whether a contract provides for indemnity, courts should interpret the contract against a finding of indemnification. *Amerco Marketing Company of Memphis, Inc. v. Myers*, 494 F.2d 904, 913-14 (6th Cir. 1974).  Contracts must demonstrate an intent to indemnify a party. *Id.*

Wisdom Dock contends that the following language of the rental agreement, signed by Brown, requires him to indemnify Wisdom Dock for the monies it paid to Ms. Brown to settle her claim:

> In accepting and agreeing to operate said boat and to use said equipment according to the terms and conditions as set forth by the Lessor [Wisdom Dock], and the Lessee [Brown], does hereby waive and relinquish any and all claims against the said Lessor, its successors or assigns, its agents, officer or employees, for any loss or damage to property or injury to person, resulting through the use, operation or possession of said boat or equipment.  Said Lessee does hereby assume all risk of such operation and use for any and all purposes.  The undersigned further agrees to hold the Lessor harmless should loss or damages accrue to any personal property of the Lessee or any other person or guest, while carried in, on or about the boat, including loss or damage caused by fire, water, theft or any other cause whatsoever.
>
> Lessee [Brown] above named agrees to be responsible for the conduct and actions of all persons operating, using or visiting said rental vessel at all times during the term of this rental agreement.
>
> Lessor [Wisdom Dock] shall not be liable for any damages to any persons whatsoever as a result of carelessness, negligence, or lack of prudence, skill or diligence on the part of the Lessee [Brown] in the use or operation of said boat.
>
> Lessee further acknowledges and agrees to use due diligence with the operation of said boat, as well as the docking boat and equipment.

In looking at the language of the rental agreement cited by Wisdom Dock, the Court finds that it does not show an intent of the parties to indemnify Wisdom Dock for the injuries sustained by Ms. Brown.  Contrary to the argument asserted by Wisdom Dock that the rental agreement "stated Brown would indemnify Wisdom Dock for any injury which occurred to any passenger of the houseboat...[for] any cause whatsoever," there is no clause that addresses indemnification for "any claim whatsoever."  The language of the rental agreement demonstrates an intent for Brown to hold Wisdom Dock harmless for any damage to personal property, but not personal injuries to other passengers.  In contrast to *Coughlin v. T.M.H. Intern. Attractions, Inc.*, 895 F. Supp. 159, 160 (W.D.Ky. 1995), the case cited by Wisdom Dock in support of its position, the agreement in that matter acknowledged indemnification for all claims and suits, not just personal property, stating that:

> we voluntarily assume all risks and shall indemnify and hold the owners, operators, and employees of Buzzards Roost Historic Cave harmless from all claims, suits, actions, damages and costs of every name and description arising out of or resulting from the privileges granted by this permit including damages caused by or resulting from the sole or joint negligence of the owners, operators, or employees of Buzzards Roost Historic Cave.

Here, no such language or even mentioning of indemnifying or holding harmless Wisdom Dock from all claims and suits is found within the rental agreement.  The language cited by Wisdom Dock regarding Brown's rights and liabilities does not address whether he would have to indemnify Wisdom Dock for his negligent acts that would cause injury to another person, but only addresses personal property.  Accordingly, as there is doubt as to whether the agreement provides that Wisdom Dock be indemnified by Brown under these circumstances, the Court finds that the rental agreement does not provide for indemnification to Wisdom Dock.  *See*

*Myers*, 494 F.2d at 913-14.[2]

## 2. Common Law Indemnification

In *Degener v. Hall Contracting Corp.*, the Kentucky Supreme Court, in an opinion by Justice Cooper, examined indemnity under Kentucky common law. *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780-81 (Ky. 2000). Justice Cooper stated that there are two (2) instances where a party may recover indemnity under common law equitable principles. *Degener* at 780. These instances include:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury." *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 256 Ky. 827, 77 S.W.2d 36, 39 (1934) (quoting *Trustees of Village of Geneva v. Brush Elec. Co.*, 3 N.Y.S. 595, 596 (N.Y. Sup. Ct.1889)).

*Id.* (holding that indemnity is only "available to one exposed to liability because of the wrongful act of another with whom he/she is not *in pari delecto*."). In explaining the second instance, the Court in *Degener* referenced the Kentucky Court of Appeals case of *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165 (1949), noting that the holding in that matter was "the primary Kentucky precedent" on common law indemnification. *Id.* In *Brown Hotel*, the Court stated that "[w]here one of two parties does an act or creates a hazard, [and the second party,] while not concurrently joining in the act, is, nevertheless thereby exposed to liability...the party who was the active wrongdoer or *primarily negligent* can be compelled to make good to the other any loss he sustained." *Brown Hotel*, 224 S.W.2d at 167 (emphasis added).

---

[2]As the Court has held that the rental agreement does not provide for indemnification to Wisdom Dock in this matter, it need not determine whether the part of the agreement in question is an unenforceable exculpatory clause as a matter of law.

In *Brown Hotel*, the hotel was held liable for injuries sustained by a pedestrian who was injured after he fell into an unsecured manhole on the hotel's property. *Id.* at 166. The hotel brought an indemnity claim against the fuel company, arguing that the fuel company's employee had left the lid unsecured after unloading a delivery of coal into the whole, and therefore, the hotel should not have to bear the complete burden of liability because the accident was caused by the fuel company. *Id.* The Court found in favor of the hotel, reasoning that because the fuel company and the hotel were not *in pari delicto* and the fuel company had been the primary negligent party, the hotel, despite its negligence, was entitled to indemnity from the fuel company. *Id.* at 167-68.

Here, both parties have asserted that the other party is the primarily negligent party in this matter. On the one hand, Brown claims that because Wisdom Dock failed to provide an adequately sized mooring rope and failed to inspect and replace the ropes supplied to his party, Wisdom Dock is the primarily negligent party. Brown's experts have supported his arguments. On the other hand, Wisdom Dock claims that because Brown failed to properly tie the mooring lines at the appropriate forty-five (45) degree angles and permitted his guests to tie a JetSki to the mooring line that snapped and injured Ms. Brown, Brown is the primary negligent party. Wisdom Dock's experts have supported its arguments.

In *Aetna Freight Lines, Inc. v. R. C. Tway Co.*, the Kentucky Court of Appeals held that in order to obtain indemnity, a party seeking indemnification has the burden of proving that he was legally liable to the injured party with whom he/she settled. *Aetna Freight Lines, Inc. v. R. C. Tway Co.*, 352 S.W.2d 372, 373-74 (Ky. 1962). The Court noted that a party who settles with the injured party, and then seeks indemnity from a third party using an argument that it was not

negligent and/or did not cause the harm to the injured party cannot recover indemnification from the third party because it cannot prove it was legally liable to the injured party. *Id.*

In the instant matter, while the parties dispute what caused the mooring rope to snap and strike Ms. Brown, Wisdom Dock has not proven that it was legally liable to Ms. Brown. Although Wisdom Dock may have settled with Ms. Brown in this action, it has claimed that it was not negligent and that the sole cause of the accident was the negligence of Brown. Similar to *Aetna Freight Lines*, the Court finds that Wisdom Dock is precluded from recovering indemnification because Wisdom Dock cannot prove that it is legally liable to Ms. Brown. *Aetna Freight Lines*, 352 S.W.2d at 373-74.

Even assuming that Wisdom Dock admitted that its rope was not proper in this instance, it still could not recover indemnification from Brown because the parties would be *in pari delecto*, under the assumption that both the rope and the manner in which Brown tied the rope to the shore were the causes of the accident. As noted *supra*, parties who are *in pari delecto* cannot recover indemnification. *Brown Hotel*, 224 S.W.2d at 167-68. In *Brown Hotel*, while the hotel was liable because the manhole resided on their property, the cause of the accident was the fuel company employee who left the manhole open, and therefore, in that matter, the parties were not *in pari delecto*. *Id.* Here, in contrast to *Brown Hotel*, if both the rope and the manner in which Brown secured the rope to the shore both caused the accident, the parties would be *in pari delecto*, and therefore, Wisdom Dock would not be entitled to indemnification. Accordingly, the common law indemnification claim asserted by Wisdom Dock against Steve Brown fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Third Party Defendant's Motion for Summary Judgment (Docket #55) is **GRANTED**. Accordingly, all claims against Steve Brown are **DISMISSED**.

An appropriate order shall issue.